FILED
United States Court of Appeals
Tenth Circuit

May 13, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENNTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL DELEVAN ENGLES,

Defendant-Appellant.

No. 09-5001

(D.C. Nos. 08-CV-193-HE-FHM and
05-CR-104-HE-1)
(N. D. Okla.)

---

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

---

Before **KELLY, ANDERSON,** and **BRISCOE**, Circuit Judges.

---

Michael D. Engles, a federal prisoner appearing pro se, seeks a certificate

of appealability (COA) in order to challenge the district court's denial of his 28

U.S.C. § 2255 motion to vacate, set aside, or correct sentence.  Because Engles

has failed to satisfy the standards for the issuance of a COA, we deny his request

and dismiss the matter.

I

This court, in addressing Engles' direct appeal, outlined the procedural

background of his case:

---

[*] This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.

Michael Engles was indicted on November 9, 2005, in the United States District Court for the District of Oklahoma on six counts arising out of vehicle searches in May 2003 and May 2004. Each search led to three charges: convicted felon in possession of a firearm and ammunition, see 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession with intent to distribute controlled substances, see 21 U.S.C. § 841(a)(1) and (b)(1)(C); and possession of a firearm and ammunition in furtherance of a drug-trafficking crime, see 18 U.S.C. § 924(c)(1)(A). Before his jury trial Mr. Engles moved to suppress evidence obtained in the first search. After the motion was denied, he was tried by a jury and found guilty on all counts. On February 24, 2006, the district court sentenced him to 420 months' imprisonment.

United States v. Engles, 481 F.3d 1243, 1244 (10th Cir. 2007).

On direct appeal, Engles "challeng[ed] the denial of his motion to suppress," id., arguing that "his vehicle was unlawfully detained while the officers awaited [the arrival of a] drug dog, because they lacked reasonable suspicion to believe it contained contraband." Id. at 1245. This court concluded that "reasonable suspicion was unnecessary" because "[t]he officers did not 'detain' the vehicle," but rather "lawfully arrested . . . Engles and his passenger," and Engles' vehicle "was parked" and "going nowhere." Id. Accordingly, this court held that "no illegality tainted the actual [May 2004] search," and affirmed Engles' convictions. Id. at 1246. The United States Supreme Court subsequently denied Engles' petition for writ of certiorari. Engles v. United States, 128 S.Ct. 242 (2007).

On April 4, 2008, Engles, appearing pro se, filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. The motion alleged, in pertinent

2

part, that Engles "and his appointed counsel . . . suffered a relationship that was embroiled in irreconcilable conflict that resulted in a constructive denial of counsel." ROA, Vol. 1, Doc. 86 at 7. In connection with this claim, the motion further alleged that the district court erred in refusing to allow Engles' appointed counsel to withdraw. In addition, Engles' motion alleged that appellate counsel was ineffective for failing to raise on direct appeal the irreconcilable conflict issue.[1]

On November 25, 2008, the district court issued an order denying Engles' §

---

[1] Engles' motion also included two additional claims: (1) whether the Supreme Court's decision in Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 2407 (2007), holding that passengers in a vehicle are seized for purposes of the Fourth Amendment when a traffic stop occurs, represented an intervening change in the law that supported the validity of the suppression claim he raised on direct appeal and entitled him to habeas relief; and (2) whether the jury instructions employed in his case were erroneous in light of the Supreme Court's decision in Watson v. United States, 128 S.Ct. 579, 586 (2007), in which the Court held that a person who trades his drugs for a gun does not "use" a firearm for purposes of 18 U.S.C. § 924(c)(1)(A).
     The district court denied both of these claims on the merits. More specifically, the district court concluded that Brendlin was inapposite, since Engle was the driver of, rather than a passenger in, the vehicle that was searched, and because the search at issue occurred after Engle and his passenger had been placed under arrest. Thus, the court concluded Engle was "not entitled to habeas relief on the basis of the search of his automobile." ROA, Doc. 93 at 3. Further, the district court rejected Engles' Watson-based claim on three grounds: because Watson was charged under the "possession in furtherance" prong of 18 U.S.C. § 924(c) rather than the "use" prong, id., because "[t]he jury was not instructed that [Engles] could be convicted under § 924(c) if it found that he had obtained the firearms in exchange for drugs," id. at 4 n.5, and because "there was no evidence that the firearms charged in the indictment were obtained by [Engles] in exchange for drugs," and instead the evidence at trial established that Engles "possessed the firearms in furtherance of drug trafficking." Id. at 4.
     Engles does not seek a COA with respect to either of these claims.

3

2255 motion. Turning first to Engles' claim that there was an irreconcilable conflict between himself and his trial attorney, the district court concluded that the purported evidence of a communication breakdown between Engles and his attorney, i.e., Engles' "refusal to allow his counsel to cross-examine one of the government's witnesses, Kim Dixon [the passenger in his vehicle at the time of the challenged search and his purported common-law wife]," was "not a lack of communication, but [rather] a disagreement regarding trial strategy, which 'is generally not a basis for ineffective assistance of counsel.'" Id. at 5 (quoting United States v. Ambort, 282 Fed. App'x 714, 717 (10th Cir. 2008)). Further, the district court rejected as "unpersuasive" Engles' assertion "that he and his attorney 'had not discussed important decisions needing to be made, such as whether Engles would testify on his own behalf . . . .'" Id. (quoting ROA, Vol. 1, Doc. 86 at 9). In particular, the district court noted that the transcript page cited by Engles in support of this assertion "reflect[ed] only that a decision as to whether [Engles] was going to testify had not yet been made, not that [Engles] and his attorney had not discussed whether he would take the stand." Id. at 5-6. In addition, the district court noted that it had "conducted a hearing on the motion to withdraw" that was filed by defense counsel at Engles' direction. Id. at 6. During that hearing, the district court noted, Engles, "[w]hen specifically asked by the court to explain the basis for his dissatisfaction with his lawyer," "cited the lack of a preliminary hearing and his counsel's failure to file a motion to suppress

4

[the results of the May 2004 search]," but "did not assert any concern that his attorney did not fully represent his interests." Id. "After being apprised of the circumstances surrounding both the 2004 search and counsel's decision not to move to suppress evidence obtained during that search," the district court noted, it "concluded that [Engles] was not entitled to new counsel as his disagreements with his attorney essentially were over matters of trial strategy." Id. at 6-7. In sum, the district court concluded, "[t]he record d[id] not show an irreconcilable conflict or demonstrate that defense counsel's representation of . . . Engles fell below the standard demanded of attorneys in criminal cases." Id. at 7. Finally, having rejected Engles' irreconcilable conflict claim, the district court concluded that Engles was not prejudiced by his appellate counsel's failure to raise that claim on direct appeal.

Engles filed a timely notice of appeal and a request for COA. The district court denied Engles' request for COA. Engles has now renewed his request for COA with this court.

II

The issuance of a COA is a jurisdictional prerequisite to an appeal from the denial of a § 2255 motion. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2553(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate

5

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Generally, a criminal defendant claiming a violation of his Sixth Amendment right to effective assistance of counsel must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant so that, but for counsel's errors, there was a reasonable probability the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). If, however, the defendant can demonstrate that there was "[a] complete breakdown in communication" between himself and his attorney, United States v. Soto Hernandez, 849 F.2d 1325, 1328 (10th Cir. 1988), a presumption of ineffectiveness will arise, making it unnecessary for the defendant to satisfy the two-pronged Strickland test. United States v. Cronic, 466 U.S. 648, 658 (1984).

In determining whether a purported breakdown in the attorney-client relationship has rendered a defendant's representation constitutionally deficient, we consider several elements, including the following: (1) whether the defendant made a timely motion requesting new counsel; (2) whether the court adequately inquired into the matter; (3) whether the conflict between the defendant and his attorney was "so great that it resulted in a total lack of communication preventing

6

an adequate defense"; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication. Romero v. Furlong, 215 F.3d 1107, 1113 (10th Cir. 2000).

Here, Engles' appointed trial counsel, at Engles' direction, moved to withdraw. The district court conducted a hearing on the motion, during which it heard from both Engles and his attorney. At the conclusion of that hearing, the district court concluded that an irreconcilable conflict did not exist, and that, instead, Engles was simply dissatisfied with certain strategic decisions made by his attorney. Accordingly, the district court denied the motion and Engles' appointed counsel proceeded to represent Engles at trial. In the course of revisiting the issue as raised in Engles' § 2255 motion, the district court also rejected as unsupported Engles' assertion that he and his appointed counsel had not discussed important decisions, including whether Engles would testify at trial on his own behalf.

In his motion for COA, Engles does not specifically challenge the district court's analysis and rejection of his irreconcilable conflict claim. Instead, he simply asserts that "[t]he [purported] irreconcilable conflict arose[] from the fact that [he] refused to allow [trial counsel] to cross examine his common-law wife 'Kim Dixon.'" Mot. at 7. Although it is not entirely clear, Engles appears to be suggesting that trial counsel became upset upon "learning that he would not be impeaching the testimony of Ms. Dixon . . . ." Id. Engles also alleges in

7

conclusory fashion that, following the district court's denial of counsel's motion to withdraw, counsel "failed to keep [Engles] informed of important developments, discuss the government's case-in-chief, []or perfect a defense, i.e., strategic strategies." Id. at 5. Finally, Engles argues, again in conclusory fashion, that this irreconcilable conflict "lead to a[n] unjust verdict." Id. at 8.

Having examined Engles' appellate pleadings and the record on appeal, we conclude that the arguments forwarded by Engles in his application for COA are legally frivolous. Moreover, we find the resolution by the district court to be undebatable. We therefore conclude that Engles has failed to make the requisite showing for the issuance of a COA with respect to the irreconcilable conflict issue. And, because Engles' ineffective assistance of appellate counsel claim essentially hinges on the merits of his irreconcilable conflict claim, we conclude that Engles has failed to establish his entitlement to a COA on that issue as well.

The application for COA is DENIED and the matter is DISMISSED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

8